KNIT GOODS PATENTS CO. v. SHUMAN et al.

(Circuit Court, D. Massachusetts. July 20, 1894.)

No. 3,157.

1. PATENTS—INFRINGEMENT—SHIRTS WITH FALSE OR SUPPLEMENTARY FRONTS.
    A patent for an improvement in shirts, all the claims of which apply only to shirts which have a double or supplementary front, is not infringed by a shirt having a false front forming part of the shirt, giving the appearance, without the reality, of a double or supplementary front.

2. SAME.
    The Barker patent, No. 253,256, for a shirt having a double or supplementary front, even if it covers a patentable invention, is not infringed by a device giving the appearance, merely, of such double front.

This was a suit by the Knit Goods Patents Company against A. Shuman and others for infringement of a patent.

Hey & Wilkinson, for complainant.
James A. Skilton, for defendants

CARPENTER, District Judge. This is a bill in equity to enjoin an alleged infringement of letters patent No. 253,256, issued February 7, 1882, to Joseph G. Barker, for a Shirt. The specification and drawings show what seems to me the nearest approach to this invention which can be found in the art to which it relates. The patentee most clearly describes his invention as follows:

My invention is designed more especially for application to woolen shirts —such as are worn by bicyclers and other sportsmen—and is an improvement upon the shirt now in very general use among such men, and which is made to open in the center of its front, and is provided upon each side of said opening with a series of eyelet holes, through which a lacing cord of bright-colored silk is run, and tied in a bowknot at the throat, said shirt also being

provided with a pair of flaps upon the inner side of said front, extending from the lower end of the opening to a point some distance below the collar of the shirt, which flaps are buttoned together before the shirt is laced up. This makes a very pretty shirt front, and it is in great demand among the class of men who wear woolen shirts; but there is a serious objection to its use in the fact that a great deal of time is wasted in putting on and taking off the shirt, due to the fact that the lacing cord has to be withdrawn from the eyelets for the greater part of the length of the opening in the front before the shirt can be taken off, and, after the shirt is put on again, the lacing cord has to be passed through all of the eyelets from which it had previously been removed. To obviate this objection, and produce a shirt having all the good features of the old shirt, and that can be put on or taken off as readily as an ordinary shirt, is the object of my present invention; and it consists, first, in a shirt provided with a double front, arranged to be buttoned at one side of the center of said front, and with a lacing cord run through two series of eyelets, one upon each side of the central vertical line of said front, whereby the shirt has the appearance of having its front opening laced up, while at the same time the shirt may be put on or taken off without materially disturbing the lacing cord. It further consists in the application, to a shirt of ordinary construction, of a supplementary front, secured to said shirt at one side and along its bottom by sewing or stitching, and along its other vertical side by means of buttons and buttonholes, or other suitable separable fastenings, said front being provided with two narrow plaits or folds extending from top to bottom thereof, the free or movable edges of which are parallel with and in close proximity to each other, and on a line with the center of the shirt front, in combination with a series of eyelet holes formed in each of said plaits at equal distances from each other and from the edge of said plait, and a lacing cord passed alternately through an eyelet hole in one plait and then through an eyelet hole in the other plait or fold, so as to lace said plaits together, as will be described. It further consists in the combination, in a shirt, of a supplementary front, permanently secured to the shirt body along one of its vertical edges and along its bottom edge by sewing or otherwise, and detachably secured to said body along its other vertical edge by buttons and buttonholes, or other separable fastenings, a series of eyelet holes upon each side of and parallel with the vertical center line of said front, an eyelet formed in each end of the collar or collar band, and a lacing cord run through the eyelet holes in said front, alternately from one series to the other, from the bottom to the top, and having one of its ends passed through one of the eyelet holes in the collar, and the other end through the eyelet hole in the other end of the collar or collar band, and then tied in a bowknot, as will be further described.

### The claims of the patent are as follows:

(1) A shirt provided with a double or supplementary front, having a lacing cord run through two rows or series of eyelet holes arranged upon each side of the central vertical line of said front, and detachably secured to the body of the shirt along one of its vertical edges by buttons and buttonholes, or other separable fastenings, substantially as described.

(2) In combination with a shirt of ordinary plain construction, a supplementary front permanently secured along its bottom and one vertical edge to the body of the shirt, and detachably secured along its other vertical edge by buttons and buttonholes, or other separable fastenings to said body, a pair of folds or plaits in the center of said front and extending from its top to a point near its bottom, a series of eyelet holes in each of said plaits, and a lacing cord run through said eyelet holes, substantially as and for the purposes described.

(3) In combination with a shirt of ordinary plain construction, the supplementary front, D, provided with the folds or plaits, n n', and secured along one of its vertical edges to the body of the shirt by buttons and buttonholes, or other separable fastenings, the two series of eyelet holes, o o, formed in the folds n and n', the two eyelet holes, q and q', formed in the opposite ends of the collar or collar band, and the lacing-cord, p, all arranged and adapted to operate substantially as described.

Without pointing out the testimony to this effect, it is sufficient to say that all the elements of the combinations here claimed are old, unless it be that a new element may be found in the lacing, which,. serving for the greater part of its length a purpose only ornamental, serves at the neck the purpose of holding in place the lower margin of the collar. I have not been able to find this exact structure in the evidence. It serves, however, only the purpose of fastening, and the part of the lacing cord so employed performs exactly the same function which was performed by the corresponding part of the lacing cord in the old shirt, which is described and shown in the patent. The invention, therefore, seems to me to consist in a device for doing away with the necessity for withdrawing more than one turn of the laces, such device consisting in putting the supplementary part on the outside, instead of on the inside, of the shirt. making the dependent or resulting change in the position of the buttons, and dropping or masking the fastening function of the lacing cord, except for one fold or turn at the neck, at which point the function survives.

· This interpretation of the patent seems to me to be in close accordance with the statements of the patent itself, and also with the opinion of the expert called by the complainant, who testifies as follows:

Cross-Int. 13. Please state what separate, independent, and essential new elements you find in the Barker invention of the patent in suit. Ans. It is chiefly the employment of a supplementary front, secured along one of its vertical edges and across its bottom to the body of the shirt by rows of stitches, making a permanent attachment of said parts along said portions of the supplementary front; the opposite vertical edge of the supplementary front being detachably secured to the body by buttons and buttonholes, a lacing cord running through two rows of eyelet holes in the center of the supplementary front and through eyelet holes in the collar or collar band, and tied in a knot thereat. The advantages of this improved construction and combination of parts consist in the facility of putting the shirt on the person and removing it from the person without disturbing the lacing in the center of the supplementary front. Cross-Int. 14. My question called for the separate and independent elements. and not for the entire combination of such elements. Please answer the previous question so interpreted. Ans. The elements of the combination claimed in the Barker patent are not in themselves new, when broadly considered, or when considered separate and independent of each other. Cross-Int. 15. Do you mean to say that none of the elements in the Barker invention are in themselves novel? Ans. I do. It is the combination of these elements in a certain peculiar way which constitutes the Barker invention. Cross-Int. 16. Please state what you understand to be the characteristics in which the combination of these old elements shows invention. Ans. They are—Firstly, the peculiar attachment of the supplementary front to the body of the shirt, so as to dispense with the use of flaps, which were attached to the shirt back of the front, and were provided with buttons and buttonholes: secondly, the retention of the lacing cord in the supplementary front, so arranged as to require only the withdrawal or inserting of one end of the lacing cord through a single eyelet hole in the collar band, and leaving the lacing undisturbed in the operation of putting on and taking off the shirt. The characteristics mentioned in the question are the attachment of the supplementary front along one of its vertical edges and at its bottom to the body of the shirt by rows of stitches, and detachably connecting the opposite edge of the supplementary front by means of buttons and buttonholes, the lacing cord running through two vertical rows of eyelet holes in the supplementary front and through eyelet holes in the collar band,

and, as stated in my previous answer, it is these characteristics of the combination of the enumerated elements which constitute the invention of Barker.

Observing the language of this testimony, it is seen that the witness says that the peculiar attachment of the supplementary front to the body of the shirt dispenses with the use of flaps. It might be thought, from these words, that it is intended to say that nothing remains to perform the function of the flaps. But on examination of the drawings and of the words of the specification it appears that this is not his meaning. The supplementary front is attached to a "shirt of ordinary construction." Looking at the description and the drawings, it appears that these words are not to be taken with minute literalness. The shirt is not of ordinary construction in all respects. The buttons are not in the ordinary place. But the ordinary shirt remains in the invention so far that those parts of the front of the shirt which, in wearing, are concealed by the supplementary part, still remain, and serve the purpose of the inside flaps of the earlier form.

Still further, and in another view of this point, a reading of the whole case of the complainant makes it clear that the old function of the lacing cord, with its resulting inconvenience or inadequacy, is still, in part, retained in the invention. To remove the shirt, the lacing must be disturbed. The counsel for the complainant, in summing up the advantages of the invention, observes that the "lacing is disturbed but little at each operation, so that the wearer is put to little inconvenience, instead of to great trouble, in putting on the shirt." This is not, then, a patent in which the utility is so great as to lead the court to exhaust the force of established rules of construction.

The respondents' counsel argues that this specification dicloses no patentable invention. He refers, in support of his argument, to the specification and drawings themselves; and, also, to the prior state of the art, in which I may say that I see nothing which can limit the field of invention further than it is limited by the disclosures of the patent itself, but in which it is easy to see, as I look at it, that the old shirt shown in the patent is but the last of a long series of developments extending in this as well as in various other directions. I have not, however, considered the arguments on either side of this question, because I am clear that the respondents have not infringed the patent. I therefore leave the question of patentable invention to be settled, if settled at all, in an action in which infringement shall be found.

Turning now to the alleged infringing device, I find it to be a blouse or shirt having a false front with a false lacing, the whole fastened throughout its whole surface to the shirt, or, as it might be otherwise described, the false front forming part of the shirt, and being illusive only in that it gives the appearance, without the reality, of a double or supplementary front. The lacing in this, as in the patented device, serves for most of its length little or no purpose except ornament, but the turn at the throat is passed through eyelet holes and tied, and thus serves to fasten the collar or neckband. The whole device, therefore, comes within the class of

shirts which appear to have, but do not have, a double front, and is therefore outside the claims of the patent in suit, all of which apply only to shirts which have a double or supplementary front.

The respondents therefore do not infringe, and the bill must be dismissed, with costs.